# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

TAYLOR ROGERS

**PLAINTIFF,**

v.

Case No. 4:23-cv-02757

**CITY OF SANTA FE, SERGEANT RUBEN ESPINOZA AND OFFICER CHRISTIAN CARRANZA**

*DEFENDANTS.*

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

This lawsuit is brought to curtail the actions of officers who thought it was appropriate to beat up a woman who suffered from mental illness. This lawsuit is brought to prevent this from ever happening again in the future because no officer should hold a citizen down in a pile of fire ants after they have already been detained/seized. Taylor Rogers ("Plaintiff") respectfully comes before this Honorable Court pursuant to 42 U.S.C 1983[1], *et seq.* complaining of Defendants CITY OF SANTA FE, SERGEANT RUBEN ESPINOZA and OFFICER CHRISTIAN CARRANZA of violating Taylor Rogers' Constitutional Rights to remain free from excessive force when she was effectively hog-tied and shoved face-forwards into a pile of fire ants. The Defendants acted under color of state law and deprived the Plaintiff of her right to be free from excessive force in violation of the Fourth

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

and Fourteenth Amendments to the United States Constitution. The Plaintiff specifically allege and would show unto this Honorable Court the following:

## I.    PARTIES AND ADVERSE PERSON(S)

1.    Plaintiff **TAYLOR ROGERS** is an individual who resides in Galveston County, Texas and may be reached by and through counsel of record: Alexander Houthuijzen, 917 Franklin St. Suite 230, Houston, Texas 77002 Phone: (713) 600-9902 Fax: (832) 565-9003.

2.    Defendant **CITY OF SANTA FE** is a duly-organized city in the State of Texas, a governmental unit of the State of Texas, is sued herein for municipal/entity liability under *Monell* and may be served with process by serving the City Hall, 12002 State Hwy. 6 P.O. Box 950 Santa Fe, Tx 77510.

3.    Defendant **SERGEANT RUBEN ESPINOZA** is a resident and citizen of the State of Texas, a Sergeant for the Santa Fe Police Department, and the final policymaker for purposes of this suit under Monell liability, theories of ratification, etc .and may be served with process at Santa Fe Police Department 3650 FM 646 N Santa Fe, Tx 77510or wherever he may be found.

4.    Defendant **OFFICER CHRISTIAN CARRANZA** is a resident and citizen of the State of Texas, an Officer for the Santa Fe police Department and the final policymaker for purposes of this suit under Monell liability, theories of ratification, etc .and may be served with process at Santa Fe Police Department 3650 FM 646 N Santa Fe, Tx 77510or wherever he may be found.

5.    Defendants SERGEANT RUBEN ESPINOZA AND OFFICER CHRISTIAN CARRANZA are hereinafter sometimes referred to as "DEFENDANT OFFICERS" and along with Defendant CITY OF SANTA FE is collectively referred to as "DEFENDANT."

## II.    JURISDICTION AND VENUE

6.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 1343(a)(3) and (4) because the Plaintiff's suit arises under 42 U.S.C. 1983.

7.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1342, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

8.      Plaintiff brings this action to redress the unlawful and flagrant excessive force against Plaintiff pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution made applicable to DEFENDANTS because of this federal due process violation.

9.      Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. §1367(a), to hear and decide claims arising under state law.

10.      Venue is proper in this district court pursuant to 28 U.S.C. §1391(b) because DEFENDANTS reside or resided in this district during the relevant time period and all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Texas.

11.      All conditions precedent have been performed or have occurred.

### III.   EXHIBITS ATTACHED

12    EXHIBIT 1-2:  PICTURE OF OFFICER HOLDING PLAINTIFF DOWN





## IV.   BACKGROUND AND FACTS RELEVANT TO ALL COUNTS

13    Plaintiff hereby attaches as EXHIBIT 1-2 the PHOTOS of the injuries that were the result

of the DEFENDANTS unconstitutional conduct, actions, and inactions, which EXHIBIT 1-2 is

incorporated by reference as though set forth fully herein factual support to Plaintiff's factual

allegations, claims, causes of action, and damages. Plaintiff also reincorporates exhibits 3-11 which

were attached to the original complaint filed in this matter as Exhibit 1 to the original complaint.

14      Plaintiff is and was, during all relevant times hereto, a citizen of the United States of America.

15      Defendant CITY OF SANTA FE and its DEFENDANT OFFICERS, at all times relevant hereto, were employed by and acting on behalf of Defendant CITY OF SANTA FE, as officer with the Santa Fe Police Department.  In addition, DEFENDANT OFFICERS' conduct, actions, and/or inactions, individually and in concert with others, includes their conduct, actions, and/or inactions under: Aiding & Abetting; Assisting & Participating; Concert of Action; Actual Authority; and Ratification.

16      DEFENDANT OFFICERS worked together in joint cooperation and concert of action. With the cooperation, protection, and encouragement of DEFENDANTS, DEFENDANTS – each of them individually, jointly, and/or collectively hid behind the authority of the law. At all times material to this Complaint, DEFENDANTS was acting under color of state law, ordinance and/or regulation, statutes, custom, and usages of Defendant CITY OF SANTA FE and Santa Fe Police Department.

17      In addition, the DEFENDANTS' conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally violative injuries and damages suffered by Plaintiffs, as set forth more fully below.

18      CITY OF SANTA FE, as a city in the State of Texas, has an ongoing custom and a historical custom of engaging in investigatory tactics and police procedures that involve excessive force

19      The aforesaid customs include, but are not limited to: (a) violating the clearly established right in a free society for a person to be free from unreasonable use of force by an officer,  (b) violating the citizens' clearly established right to due process of law, (c) violating a fundamental tenant of common decency in a civilized society that a grown man should never hurt a woman, (d)

ratification of the bad acts by the **DEFENDANT OFFICERS** by **CITY OF SANTA FE** essentially stating that the officer did everything by the book and nothing was done incorrectly when in fact the conduct of the Defendant Officers was excessive to the need and the extremity of their actions should shock the conscience.[2]

20.     **DEFENDANTS** have certain policymakers who are aware of these shortcomings (though described in different terms), have failed to take any meaningful remedial actions, and, through willful blindness and deliberate difference, have endorsed these customs. These policymakers include but are not limited to: **SERGEANT RUBEN ESPINOZA AND OFFICER CHRISTIAN CARRANZA** and any other persons within the internal affairs division of the **CITY OF SANTA FE** whose final decision-making on the officers involved in this case was not to fire them, discipline them, or really do anything at all despite their constitutional violations of Plaintiffs' clearly-established right to remain free from excessive force which was recognized by the Fifth Circuit at the time of the Defendants' constitutionally-violative conduct. Further policymakers include the not yet known field training officer of **DEFENDANT OFFICER** whose training is so lacking in any meaningful way that performance of their job could only be classified legally as deliberate indifference. These policymakers are parties to this case.

21.     Through the customs laid out above, **DEFENDANTS** deprived Plaintiff of rights, privileges, and immunities secured by the United States Constitution. This deprivation included depriving Plaintiffs of Plaintiffs' right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment of the United States Constitution as well as their right to be free from

---

[2] "When a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

unreasonable use of force. This deprivation also included depriving Plaintiff's guarantee of equal protection by the law prescribed in the Fourteenth Amendment of the United States Constitution. The particulars of these deprivations are described more fully below.

22.    On August 19, 2021, Plaintiff was driving her son to when Santa Fe I.S.D Police Officer Moore came down running to Plaintiff's vehicle yelling to stop her vehicle.

23.    Ms. Rogers panicked and drove the wrong way.

24.    Ms. Rogers suffers from mental illness and has PTSD from a previous incident with the same officers who used excessive force against her on August 19, 2021.

25.    Plaintiff became afraid and panicked.

26.    DEFENDANT OFFICER Espinoza was driving down the main street towards Plaintiff, so Plaintiff chose to back up into the bus lane while attempting to drive the opposite direction Officer Moore then blocked the road and parked in the bus lane. DEFENDANT OFFICER Espinoza then proceeded to ram into Plaintiff's vehicle, which had her son inside.

27.    DEFENDANT OFFICER Carranza arrived at the school, he immediately slammed Plaintiff to the ground, and handcuffed her so tight that the handcuffs cut into her skin.

28.    DEFENDANT OFFICER Carranza twisted Plaintiff's leg with excessive force, effectively hog tied her (a practice which all departments have now regarded as inhumane and inappropriate for an officer to do) and buried her face in a pile of fire ants leaving the Plaintiffs' face and body in excruciating pain.   He pushed her legs upwards into the air while he also held her hands behind her back.

29.    DEFENDANT OFFICER Carranza had his BWC (Bodily Worn Camera) in the video you can hear Plaintiff screaming and pleading to DEFENDANT OFFICER to let her up as she was

getting bitten by fire ants. While Plaintiff was effectively being hog tied (her legs were held in the air while the officer also held up her arms behind her back and being bitten by ants, Officer Weiland commented to Plaintiff that her son was still in the car and was watching as Plaintiff was being tortured. Plaintiff didn't want her son to hear her in pain, so she got quiet while she was in excruciating pain. The video would shock the conscience of any reasonable person who watches it.

30.     DEFENDANT OFFICERS were not being respectful towards Plaintiff. There was no reason to be aggressive in this situation. Ms. Rogers had already been detained and holding her down for a protracted period in a pile of fire ants was excessive to the need and the very definition of excessive force.

31.     Furthermore, no reasonable peace officer should have treated Ms. Rogers, with the same disrespect this peace officer did. In fact, no reasonable officer would have held Ms. Rogers legs up and behind her body whilst also pressing her face and torso into a pile of fire ants.

32.     In this circumstance, after an individual is secured, the officer should have stopped the intense interaction. Instead, he proceeded to turn up the flames. He buried Plaintiff's face in a pile of fire ants. Ms. Rogers was not armed. She possessed no weapons. She also stands at a height of 5 feet, 7 inches and weighs about 130 pounds. All the officers on scene were larger than Ms. Rogers and most of them were male. The offending officers who assaulted Ms. Rogers were ALSO all males.

33.     What's more, the rest of the officers just stood by and watched as Officer Carranza held Ms. Rogers' face in the ant pile. Every police department has policies which state that after a person has been detained that officers are supposed to administer first aid and/or help the person. None of the officers who were standing around the scene, including ESPERANZA, did anything to assist Ms. Rogers or help her as she screamed in pain at the hoard of fire ants which bit her entire face and

upper chest area. The pictures of the bites from the ants are horrific to say the least.  (see Exhibits 3-11).

34.     All of these actions, inactions, omissions, and conduct by the **DEFENDANT OFFICERS** are attributable to City of Santa Fe because of their ratification of the behavior.

### V.      42 U.S.C. § 1983 CLAIMS/CAUSES OF ACTION/COUNTS – *APPLICABLE TO ALL COUNTS HEREIN*

35.     Plaintiff re-alleges all of the allegations in the previous paragraphs1—29, as though fully set forth herein, to support Plaintiff's elements, claims, causes of action, and counts

36.     Pursuant to 42 USC § 1983, **DEFENDANT**, "under color of state law," "subject[ed] or cause[d] to be subject[ed Plaintiff], a "citizen of the United States," the deprivation of [his] "rights, privileges, or immunities secured by the Constitution and laws," [and] "[should be held liable] to [Plaintiff] in an action at law, suit in equity, or other proper proceeding for redress."

37.     Plaintiff invokes her Constitutional rights, under the 1st, 4th, and 14th Amendments to the United States Constitution – to wit:

    a.   Right to be Free from Excessive Force;

    b.   Failure to Intervene;

    c.   Right to be Free from Cruel and Unusual Punishment; and

    d.   Substantive Due Process Rights (Life, Liberty, and Property

38.     At all times relevant to this incident, after Plaintiff was detained; Plaintiff was not a threat to herself or others.

39.     At all times relevant to this incident, **DEFENDANT OFFICERS** were duly appointed police officer for **CITY OF SANTA FE** and **SANTS FE POLICE DEPARTMENT.**

40.     At all times relevant to this incident, **DEFENDANTS** were acting "under color of state law." That is, **DEFENDANT OFFICER** was (i) on duty, (ii) in uniform, (iii) was using departmental issued and approved equipment, (iv) departmental policies/procedures/customs permitted, prohibited, and/or was unconstitutionally silent on their actions and/or inactions, and **CITY OF SANTA FE** approved its **DEFENDANT OFFICER'S** actions and/or inactions.

41.     At all times relevant to this incident, Plaintiffs' rights under the 1ˢᵗ, 4ᵗʰ, and 14ᵗʰ Amendment rights/claims arose when Plaintiffs were "seized" – that is:

      a.      when **DEFENDANT OFFICERS** terminated Plaintiffs' freedom of movement through a means intentionally applied[3];

      b.      when Plaintiff, a reasonable person, believed was not free to leave[4];

      c.      when **DEFENDANT OFFICERS** purposely detained Plaintiff but used more force than intended/necessary[5];

      d.      when **DEFENDANT OFFICERS** purposely detained Plaintiff but used more force than intended/necessary for the detention.

41.     Plaintiffs' rights under the 14ᵗʰ Amendment further arose when **DEFENDANTS** created a dangerous situation when it used excessive force, escalated the situation, and failed and/or refused to protect Plaintiff; and, when **DEFENDANTS** restrained Plaintiffs' personal liberty failed and/or refused to protect Plaintiff.

42.     At all times relevant to this incident, **DEFENDANTS** use of force was Constitutionally

_____

[3] *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989).

[4] *Breadline v. California*, 551 U.S. 249, 255 (2007).

[5] *Vathekan v. Prince George's County*, 154 F.3d 173, 178 (4th Cir. 1998).

violative because excessive force was used.[6]"

43.     At all times relevant to this incident, the **CITY OF SANTA FE** and **DEFENDANT OFFICERS** deprived Plaintiff of her right to be free from excessive force – a right secured by the US Constitution. **DEFENDANT'S** failure to intervene and stop the excessive force further violated this right. **DEFENDANT'S** lack of training on use of force and excessive force further violated this right. **DEFENDANT'** failure to supervise and their lack of enforcement of their written audio/visual-recording policy further violated this right by allowing the conduct of excessive force to go on with impunity and ignorance to same.  **DEFENDANT'S** policy and absence of official policy, in the face of clearly known Constitutional law and known violations, inflicted a deprivation of Plaintiff's Constitutional rights.  **DEFENDANT'S** policy and absence of policy, also established through ratification, inflicted a deprivation of Plaintiff's Constitutional rights.  **DEFENDANTS** disregarded a known consequence of risk of serious bodily injury could occur due to their lack of training; vague, ambiguous, and non-specific definitions of use of force; with no written policy on excessive force; and no supervising the use of force through failure in their policy to adhere to audio/visual recording policy inflicted a deprivation of Plaintiff's Constitutional rights.  These described actions and inactions amounted to **DEFENDANT'S** deliberate indifference and were the "moving force" behind the constitutional violation alleged herein.

44.     Municipal liability is also alleged herein based on **CITY OF SANTA FE**'s failure to train, which failure to train was a deliberate indifference to Plaintiff's rights.  Here, the **CITY OF SANTA FE** failed to train its employees with respect to a clear constitutional duty/duties that arises in

---

[6] *Ramirez v. Martinez*, 716 F.3d 369, 376-377 (5th Cir. Tex. 2013) (holding that a Defendant Officers' force is justified to effectuate an arrest so long as the arrest is lawful and excessive force is not used.).

situations that its employees are certain to face.  And, the CITY OF SANTA FE failed to train its employees with respect to a clear constitutional duty/duties that arise where the need for training is not obvious at the outset, but a pattern of violations put CITY OF SANTA FE on notice of the need to train.  CITY OF SANTA FE had knowledge of the potential for constitutional violations and either authorized, condoned, approved, or assisted in the violation of Plaintiff's constitutional rights. What's more, CITY OF SANTA FE and its policymakers "implicitly or explicitly adopted and implemented" the above-described careless and reckless policies or had actual or constructive knowledge of such policies.

45.     At all times relevant to this incident, the CITY OF SANTA FE and DEFENDANT OFFICERS proceeded with conscious and deliberate indifference to the safety and welfare of Plaintiff.

46.     At all times relevant to this incident, DEFENDANT OFFICER'S conduct was "plainly incompetent" and/or was a "knowing violation of the law."

47.     At all times relevant to this incident, CITY OF SANTA FE and DEFENDANT OFFICERS engaged in the conduct complained of herein, which conduct, actions, and/or inactions were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

48.     Plaintiff seeks unliquidated damages within the jurisdictional limitations of the court.

**VI.     <u>CAUSES OF ACTION — COUNT 1: 42 U.S.C. 1983 EXCESSIVE FORCE (AS TO ALL DEFENDANT)</u>**

49.     Plaintiff re-alleges all of the allegations in the previous paragraphs1—43, as though fully set forth herein, to support Plaintiff's elements, claims, causes of action, and counts.

50.     Carefully balancing of the nature and quality of the intrusion on Plaintiff's 4th Amendment interest against the countervailing governmental interest at stake, DEFENDANT OFFICER used excessive force against Plaintiffs, pursuant to *Graham v. Connor*, 490 U.S. 386, 395-96 (1989), that was unnecessary in light of the circumstances – to wit:

    a.    when they went hands-on with Plaintiffs when Plaintiff was already detained;

    b.    when they flung and slammed Plaintiff to the ground;

    c.    when they buried Plaintiff's face in a pile of fire ants leaving the Plaintiffs' face and body in excruciating pain;

    d.    when DEFENDANT OFFICER effectively hog tied Plaintiff Taylor Rogers, for trying to escape being bitten by fire ants and moving her face away;

    e.    when DEFENDANT OFFICERS stood by as a member of their police force effectuated excessive force on Ms. Rogers and they did not render aid or attempt to help Ms. Rogers in any way.

51.     DEFENDANT'S use of force was objectively unreasonable in light of the totality of the circumstances confronting the OFFICER, without regard to the OFFICER'S underlying intent or motivation[7]. *Graham* at 397. Specifically, Defendant OFFICER:

    a.    knew that Plaintiff did not present a danger to herself or others (as she was already detained);

    b.    affirmatively chose to use force that caused injury to Plaintiff; and

    c.    used force that was excessive to the need.

52.     Plaintiffs' constitutional right to remain free from excessive force was:

    a.    secured to them by the Fourth and Fourteenth Amendments to the United States Constitution;

---

[7] An officer's intent or subjective motivations may be considered by a fact-finder when evaluating the credibility of his testimony. *Graham* at 399.

b.     violated by Defendant **OFFICER**;

c.     clearly established within both the Fifth Circuit and the Southern District of Texas at all times relevant hereto; and[8]

d.     Plaintiff suffered "(1) an injury," "(2) which resulted from the use of force that was clearly excessive to the need," and "(3) the excessiveness of which was objectively unreasonable" when Defendant **OFFICER** used excessive force against her, as described above.

53.     At all times relevant hereto, all reasonable police **OFFICER** would have known:

a.     law enforcement **OFFICER** must only use force that is justified by a need;

b.     the use of force by a law enforcement officer must be objectively reasonable in light of the circumstances;

c.     Plaintiff had a clearly established right to remain free from an unreasonable use of force as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

***d.     the quantum of force used by DEFENDANT OFFICER against Plaintiff was excessive to the need; is impermissible during any detention; was a clear violation of Plaintiff's constitutional rights; and was conduct unbecoming of a police officer.***

54.     Here, Defendant **OFFICER'S** actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

55.     Here, CITY OF SANTA FE, through its Santa Fe Police Department, has *Monell* liability for its constitutionally deficient policy; its constitutionally deficient practice, custom, and usage; its

---

[8] "It has long been clearly established that, when a suspect is not resisting, it is unreasonable for an officer to apply unnecessary, injurious force against a restrained individual, even if the person had previously not followed commands or initially resisted the seizure,"… "If the Officers unnecessarily placed Aguirre in the maximal-restraint position when there was no reason to believe he had committed a serious crime, that he posed a continuing threat to the Officers or public safety, or that he was resisting the Officers' seizure or holding of him, the Officers violated Aguirre's clearly established constitutional rights."  Estate of Aguirre v. City of San Antonio, 995 F.3d 395 (5th Cir. 2021).

supervisory responsibility failures over DEFENDANT OFFICER; its ratification of Defendant OFFICERS' decision, actions, and the basis for his decisions and actions; and for failure to train and supervise, as set forth below.  Defendant CITY OF SANTA FE's actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

56.    Plaintiff seeks unliquidated damages within the jurisdictional limitations of the court.

57.    Additionally, Plaintiff seeks punitive damages against DEFENDANT OFFICERS because they:

   a.    acted with conscious indifference to the possibility that they would unnecessarily injure Plaintiff under the circumstances;

   b.    acted with reckless or callous indifference to Plaintiffs' federally protected rights;

   c.    acted with deliberate indifference to the likelihood that they would violate Plaintiffs' constitutional rights by using excessive force that was unjustified by the need;

   d.    recklessly trampled on Plaintiffs' clearly established constitutional rights through plainly unlawful conduct;

   e.    acted in a grossly negligent manner;

   f.    knew Plaintiff did not present a danger to herself or other persons in the immediate vicinity;

   g.    acted with conscious indifference to Plaintiffs' rights when they utilized force in excess of any need at the time of such arrest;

   h.    acted with conscious indifference to Plaintiffs' rights when they used force that caused serious injuries to Plaintiff; and/or

   i.    recklessly trampled on Plaintiffs' clearly established constitutional rights through plainly unlawful conduct.

58.     The fifth Circuit has examined what happens when officers use force against an already subdued suspect.[9] All of the cases support the proposition that once a person has been subdued or detained by the police that continued use of force against that person by the police is objectively unreasonable. In the video, Plaintiff can clearly be seen subdued by Officer Carranza who chooses to hold her down in an ant pile for three minutes while all the other officers, including Espinoza, watch on as Plaintiff is manhandled, effectively hog-tied, and held down in ant pile for three minutes.[10] The actions of the Defendants in this case are the textbook definition of excessive force. This claim survives a 12b6 motion to dismiss and should be brought to a jury.

### VII.    CAUSES OF ACTION — COUNT 4: 42 U.S.C. 1983 FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE[11] (AS TO CITY OF SANTA FE)

59.     Plaintiff re-alleges all of the allegations in the previous paragraphs1—65, as though fully set forth herein, to support Plaintiff's elements, claims, causes of action, and counts.

60.     Defendant CITY OF SANTA FE failed to train, supervise, and discipline its employees amounting to a deliberate indifference to the Plaintiffs' constitutional rights. *City of Canton, Ohio v. Galveston*, 489 U.S. 378 (1989).  Deficient employment decisions regarding training, supervision, and discipline can subject a governmental entity to §1983 liability.  *See Brown*, 520 U.S. 397 (1997);

---

[9] In Joseph on behalf of Estate of Joseph v. Bartlett, 981 F.3d 319, 335 (5th Cir. 2021), the Court held that, "Force must be reduced once a suspect has been subdued." "Within the Fifth Circuit, the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable." Timpa, 20 F.4th at 1034. Aguirre v. City of San Antonio, 995 F.3d 395, 424 (5th Cir. 2021) (Jolly, J., concurring in the judgment) (concluding that the officers' use of force was initially justified but became a violation of clearly established law when officers continued to "apply the maximal restraint position for another two minutes" after the decedent had appeared to stop resisting).

[10] Fairchild v. Coryell County ("Fifth Circuit held that officers who continued to use force after Plaintiff was already restrained and subdued was a violation of clearly-established law")

[11] An unconstitutional custom or policy may also be shown by evidence of deficient or inadequate training, supervision, or hiring of law enforcement officers by municipal officials. *City of Canton v. Galveston*, 489 U.S. 378 (1989); *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997); *Wellington v. Daniels*, 717 F.2d 932 (4th Cir. 1983).

*Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1417 (5th Cir. 1996).

61.     At all times relevant, Defendant CITY OF SANTA FE had a duty to train, supervise, and

discipline their employees and agents, and Defendant CITY OF SANTA FE breached those duties.

62.     Defendant CITY OF SANTA FE breached those duties, in part, by:

   a.     improperly training, authorizing, encouraging, or directing DEFENDANT
          OFFICER: (i) on proper use of force; (ii) on proper intervening; and (iii) on proper
          policies, practices, customs, and usages to secure and not infringe on Constitutional
          rights;

   b.     improperly supervising DEFENDANT OFFICER: (i) on proper use of force; (ii) on
          proper intervening; and (iii) on proper policies, practices, customs, and usages to
          secure and not infringe on Constitutional rights;

   c.
   d.     improperly disciplining DEFENDANT OFFICER: ((i) on proper use of force; (ii)
          on proper intervening; and (iii) on proper policies, practices, customs, and usages to
          secure and not infringe on Constitutional rights;

   e.
   f.     failing to investigate allegations of: excessive force; failure to intervene; and
          unconstitutional polices, practices, customs, and usages.

63.     Plaintiff has shown (1) CITY OF SANTA FE's training procedures were inadequate; (2)

CITY OF SANTA FE's policymakers were deliberately indifferent in adopting the training policy;

and (3) the inadequate training policy directly caused Plaintiff's injuries and damages. *Conner v.

Travis County*, 209 F.3d 794, 796 (5th Cir. 2000). Second, even if CITY OF SANTA FE's training

program does prevent constitutional violations, CITY OF SANTA FE is still liable because its

policymakers were put on notice that a new program was called for. *Bd. of the County Comm'rs v.

Brown*, 520 U.S. at 407-408. "Their continued adherence to an approach that they know or should

know has failed to prevent tortious conduct by employees may establish the conscious disregard for

the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal

liability." *Id.* (citing *Canton* v. *Galveston*, 489 U.S. 378, 390 n. 10 (1989). Third, the U.S. Supreme

Court in *Brown* also stated that it did not foreclose the possibility that evidence of a single violation of federal rights, accompanied by a showing that a governmental entity has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger entity liability, which is the case here. *Id.* at 409 (citing *Canton v. Galveston*, 489 U.S. at 390, and n. 10 ("It may happen that in light of the duties assigned to specific OFFICER or employees the need for more or different training is so obvious . . . that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need")). Here, for example, DEFENDANT OFFICER'S actions were uniform, consistent, in collaboration with one another, and were ratified by all involved.

64.    *Inter alia,* CITY OF SANTA FE's lack of training, supervision, and discipline on use of force and excessive force deprived Plaintiff of his clearly established Constitutional rights – rights secured by the US Constitution, which actions amounted to deliberate indifference and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the deprivation of his Constitutional rights, the injuries, and damages.

65.    Defendant CITY OF SANTA FE's failure to supervise and their lack of training and lack of enforcement of their written audio/visual-recording policy deprived Plaintiff of his clearly established Constitutional rights by allowing the use of force and excessive force to go with impunity and ignorance to same, which actions amounted to deliberate indifference and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the deprivation of his Constitutional rights, the injuries, and damages.

66.     What's more, Defendant CITY OF SANTA FE, a municipal actor, disregarded a known or obvious consequence of its action to not implement a proper policy on permitting and protecting one's clearly established, Constitutional right to remain free from  excessive force and ratification.

67.     What's more, Defendant CITY OF SANTA FE was on actual or constructive notice of the need for training, supervision, and discipline because of a pattern of similar unconstitutional acts by its OFFICER occurred within a relevant period of time before the incident.

68.     What's more, Defendant CITY OF SANTA FE acted in conscious disregard of the constitutional rights of its residents – namely, Plaintiff – by failing to train, supervise, and discipline its OFFICER.

69.     What's more, the unconstitutional consequences of failing to train are and were so patently obvious to Defendant CITY OF SANTA FE that it is liable under § 1983 without proof of a pre-existing pattern of violations.

70.     Defendant CITY OF SANTA FE failure to adequately train, supervise, and discipline DEFENDANT OFFICER amounted to deliberate indifference to Plaintiff's rights under the United States Constitution.

71.     Defendant CITY OF SANTA FE ratification and/or concealment of DEFENDANT OFFICER' actions or omissions amounted to deliberate indifference to Plaintiff's rights under the United States Constitution.

72.     This policy is tacitly or overtly sanctioned, as evidenced by the conduct of CITY OF SANTA FE failure to train, supervise, investigate, and discipline any of the OFFICER involved in this incident amounting to deliberate indifference to Plaintiff's constitutional rights.

73.     *Monell* liability can be imputed to DEFENDANT because there was a failure to train the

police OFFICER in this case in the continuum of using force. In the present case, there is a pattern of this sort of conduct evidenced by the extremity with which the situation became extreme and the **DEFENDANT OFFICERS**, a grown man held a woman down in an ant pile for three minutes. The bystander Esparanza was promoted. Santa Fe overlooked the Defendants' conduct. Plaintiff prevails on any question of law concerning whether *Monell* liability can be imputed to the city for one constitutional violation. *Brown v. Bryan County, OK*, 219 F.3d 450 (5th Cir. 2000).

74.     DEFENDANT' actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

75.     DEFENDANTS were not properly trained on use of force in that they held Ms. Rogers down in an ant pile for three months in a hog-tie-esque fashion and not a single officer offered to help Ms. Rogers or came to her aid. Police departments must have training on not using holds that mimic hog-ties especially of unassuming and petite women who are posing no threat to a 200-pound male police officer. The training at Santa Fe was devoid of teaching on the dangers of using such holds as well as the dangers of not rendering aid to someone who has been exposed to a horde of fire ants. Medical attention is what was needed and Santa Fe failed to train its officers on that need. The Justice Department has warned about the dangers of hog-tieing and similar manuevers as far back as 1995.[12]

76.     Plaintiffs seek unliquidated damages within the jurisdictional limitations of this court.

### VIII.   CAUSES OF ACTION – COUNT 5: 42 U.S.C. 1983 VIOLATION OF DUE PROCESS (AS TO ALL DEFENDANT)

---

[12] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ojp.gov/pdffiles/posasph.pdf

77.     Plaintiff re-alleges all of the allegations in the previous paragraphs1—88, as though fully set forth herein, to support Plaintiff's elements, claims, causes of action, and counts.

78.     Plaintiff's constitutional right to due process as a free citizen was:

    a.     secured to her by the Fourteenth Amendment to the United States Constitution

    b.     violated by **DEFENDANT OFFICER** at the scene of the incident, and by Defendant; and

    c.     clearly established within both the Fifth Circuit and the Southern District of Texas

79.     On August 19, 2021, **DEFENDANTS** violated Plaintiffs' Fourteenth Amendment right to Due Process when they:

    a.     used unnecessarily excessive force;

    b.     caused serious injuries to Plaintiffs;

    c.     used excessive force without furthering any legitimate penological interest;

    d.     used said excessive force in bad faith, maliciously, and recklessly; and

    e.     by using excessive force that was objectively unreasonable under the circumstances.

80.     **DEFENDANTS'** conduct was:

    a.     deliberate and purposeful;

    b.     was plainly incompetent;

    c.     a knowing violation of the law;

    d.     predicated upon the patently unreasonable belief that the conduct herein was reasonable;

    e.     an intentional violation of the law;

    f.     consciously and deliberately indifferent to Plaintiffs' constitutional rights and safety;

g.      performed while knowingly disregarding the obvious risk that the above actions would designedly result in his inability to comply with any officer's verbal commands or physical forces

h.      a significant threat to Plaintiffs' clearly established constitutional right to remain free from Due Process violations and excessive force; and

i.      evidences unreasonable misunderstandings of their respective powers and responsibilities.

81.    No reasonable officer could ever believe that Plaintiffs' conduct herein warranted the reckless, malicious, bad faith, and deliberately indifferent abuse perpetrated by DEFENDANTS herein.

82.    Plaintiff seeks punitive damages against DEFENDANT OFFICERS because they:

a.      knew they lacked constitutional authority to treat Plaintiffs the way they did under the circumstances herein;

b.      acted with conscious indifference to the possibility that they were performing unreasonably unlawful acts;

c.      acted with reckless or callous indifference to Plaintiffs' federally protected rights;

d.      recklessly violated Plaintiffs' clearly established constitutional rights to remain free from Due Process violations; and

e.      acted in a grossly negligent manner.

83.    Defendant CITY OF SANTA FE and its DEFENDANT OFFICERS, namely Defendant ESPINOZA AND CARRANZA, used excessive force against Plaintiff – to wit:

a.      when they went hands-on with Plaintiffs when Plaintiffs were engaged in a lawful, constitutionally-protected act;

b.      when they flung and slammed Plaintiff to the ground;

c.      when they buried Plaintiff's face in a pile of fire ants leaving the Plaintiffs' face and body in excruciating pain;

d.      when DEFENDANT OFFICER effectively hog tied Plaintiff Taylor Rogers and held

her down in an ant pile for three minutes.

      e.     When all the Defendants refrained from rendering aid to Plaintiff Taylor Rogers

84.    Defendant CITY OF SANTA FE and its DEFENDANT OFFICERS, namely Defendant ESPINOZA AND CARRANZA'S, conduct was "deliberate decision to deprive a person of life, liberty, or property."

85.    Defendant CITY OF SANTA FE and its DEFENDANT OFFICERS, namely Defendant ESPINOZA AND CARRANZA'S action "can properly be characterized as conscience shocking, in a constitutional sense[13]" and/or was recklessness, gross negligence, or deliberate indifference to the rights of Plaintiff.

86.    Plaintiff suffered "(1) an injury," "(2) which resulted from the use of force that was clearly excessive to the need," and "(3) the excessiveness of which was objectively unreasonable" when DEFENDANTS used excessive force against Plaintiff, as described above.

87.    Defendant CITY OF SANTA FE implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices.  These included, among other things, allowing Defendant CITY OF SANTA FE and its DEFENDANT OFFICERS, namely DEFENDANT ESPINOZA AND CARRANZA, to unconstitutionally and excessively use force in violation of the United States Constitution.

---

[13] Conduct that "shocks the conscience" is the type that violates the "decencies of civilized conduct." *Rochin v. California*, 342 U.S. 165, 172-73 (1952).  It is also conduct that is so brutal and offensive that it does not comport with "traditional ideas of fair play and decency." *Whitley v. Albers*, 475 U.S. 312, 327 (1986). The "shock the conscience" standard is found "at the ends of the tort law's spectrum of culpability." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).  As a result, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to give rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849.

88.    Defendant CITY OF SANTA FE failure to adequately train, supervise, and discipline DEFENDANT OFFICERS amounted to deliberate indifference to Plaintiff's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

89.    Defendant CITY OF SANTA FE's ratification and/or concealment of DEFENDANT OFFICER' actions or omissions amounted to deliberate indifference to Plaintiff's rights to be free from excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

90.    What's more, Defendant CITY OF SANTA FE's continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees establishes the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability. *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 407 (U.S. 1997).

91.    DEFENDANT' actions were clearly incompetent, were a knowing violation of the law, were made with deliberate indifference, and were the moving force, directly caused, proximately caused, and/or were a substantial factor in causing the Constitutionally-violative injuries and damages suffered by Plaintiff, as set forth more fully below.

92.    Plaintiffs seek unliquidated damages within the jurisdictional limitations of this court.

## IX.    JURY DEMAND

93.    Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## X.    DAMAGES

94.    As a result of the actions and circumstances described above, Plaintiff has suffered injuries and damages including but not limited to one or more of the following:

     a.     Nominal Damages.

     b.     Actual Damages.

     c.     Compensatory Damages.

     d.     Past and future physical injuries, impairment, inconvenience, and disfigurement;

     e.     Past and future pain and suffering;

     f.     Past and future mental anguish, emotional distress, anger, and humiliation;

     g.     Past and future economic losses and loss of earning capacity;

     h.     Past and future medical expenses; [14]

     i.     Presumed Damages;

     j.     Attorney's Fees, pursuant to 42 U.S.C. §§ 1983, 1988, *et seq.*;

     k.     Expert Fees, pursuant to 42 U.S.C. §§ 1983, 1988, *et seq.*;

     l.     Punitive Damages, as to DEFENDANT OFFICER;

     m.     Unliquidated damages within the jurisdictional limits of this court; and

     n.     Pre-judgment and post-judgment interest.

## XI.    ATTORNEY'S FEES

95.    Plaintiff is entitled to recover attorneys' fees and costs under 42 U.S.C. §§ 1983 and 1988.

## XII.    PRAYER FOR RELIEF

96.    For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment

---

[14] Plaintiff's "paid or incurred" medical expenses to date exceed $20,000.00.

against **DEFENDANT** consistent with the relief requested herein and award the Plaintiff actual damages and punitive damages in an amount to be determined by Plaintiff's jury, along with costs of this action including reasonable attorney fees, and for any and all other relief, at law or in equity, to which Plaintiff may show himself justly entitled.

## XIII.   RULE 7 REPLY

97.      Attorneys for Defendant Espinoza claim that he is entitled to qualified immunity because his only action on the date of the incident was "ramming Plaintiff's car to stop her erratic and evasive driving." In the amended complaint above, Plaintiff explains that Espinoza was liable for the injuries to Plaintiff through bystander liability and because he failed to render aid to Plaintiff. Espinoza stood by for three minutes as Carranza held Plaintiff down in an ant pile face first. His inactions give rise to the 1983 claims against him. No law enforcement personnel is entitled to qualified immunity for standing by as a citizen is being assaulted by a peace officer when there is no constitutionally valid reason for the force being used by the officer. As a "Chief", Espinoza should be aware of police training as it relates to force and as it relates to inaction by officers when one officer is doing the wrong thing. Espinoza could have told Carranza to quit holding Plaintiff face down in an ant pile. Espinoza could have told Carranza he was violating policy with his hold of Plaintiff. Espinoza could have rendered aid to Plaintiff. Espinoza did none of those things. Therefore, he is also liable under 1983 for the injuries sustained by Plaintiff as he violated her clearly-established right to remain free from excessive force in that he allowed another officer to effectuate the force on Plaintiff and because he failed to render any aid to Plaintiff afterwards. Their claim of qualified immunity should be denied by this honorable court.

Dated: January 5, 2024

Respectfully Submitted,

*/s/ Alexander J. Houthuijzen*
**Alexander J. Houthuijzen**
Texas Bar No. 24101224
Fed ID No. 3083690
917 Franklin St. 230
Houston, Texas 77002
(713) 600-9902
(832) 565-9003
alex@alexthedefender.com
**ATTORNEY FOR PLAINTIFF**