In the United States District Court
for the Southern District of Texas
Galveston Division

| | |
|---|---|
| Taylor Rose Rogers,<br>*Plaintiff,*<br><br>*versus*<br><br>City of Santa Fe, Texas; *et al.*,<br>*Defendants.* | Civil Action No.<br>3:24-cv-38<br>(Jury Trial) |

Plaintiff's Response to Defendants Espinoza and Carranza's
Motions for Summary Judgment

To the Honorable Jeffrey V. Brown:

Now comes Plaintiff Taylor Rose Rogers, responding to Defendants Espinoza and Carranza's motions for summary judgment.[1] She respectfully shows the Court as follows:

### Standard of Review

A court may only enter summary judgment when the moving party establishes that it is entitled to judgment as a matter of law because no genuine dispute exists as to any material fact.[2] The Court must draw all reasonable inferences in the light most favorable to the nonmoving

---

[1] Docs. 54 & 55, respectively.

[2] Fed. R. Civ. P. 56(a).

party, Plaintiff here.[3] The burden rests on the moving party to demonstrate the lack of a genuine dispute of material fact.[4] On the other hand, the nonmoving party must identify the evidence in the record that supports its claim, and explain how the identified evidence does so.[5] There is a genuine dispute where a reasonable jury could find for the nonmoving party, and a fact is material if it could affect the outcome of the case.[6]

In deciding whether to grant judgment as a matter of law (much like a decision to grant summary judgment), a "court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, *at least to the extent that that evidence comes from disinterested witnesses.*"[7] When liability is disputed, an officer's account will invariably be favorable to himself, and the credibility of that account is crucial.[8] Here, summary judgment clearly cannot rest on the statements of interested witnesses—chiefly Defendants' own statements. "Cases that turn

---

[3] *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

[4] *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986).

[5] *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citations omitted).

[6] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[7] *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000) (emphasis added).

[8] *Gooden v. Howard County, Md.*, 954 F.2d 960, 971 (4th Cir. 1992).

crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment."[9]

## Argument

Taylor Rose Rogers had her car hit by another vehicle, was slammed face-first onto the ground, was subject to pain compliance techniques while in handcuffs, and was allowed to be bitten by fire ants hundreds of times[10] for an extended period of time, all because she drove the wrong way in an unfamiliar parking lot while trying to drop her son off for school early enough that he could have breakfast. All of this happened despite the fact that she never threatened or otherwise provoked the officers in any way that justified the force used against her.

Based on the video evidence already attached to Defendants' motions, a reasonable jury could easily find that Carranza and Espinoza used excessive force against Ms. Rogers, and that Espinoza failed to intervene during Carranza's excessive use of force.

Before detailing her substantive response to Defendants' motions, Plaintiff makes two brief notes. First, both Defendants' arguments, but especially Defendant Carranza's argument, rely heavily on Plaintiff's supposed "non-compliance with detention,"[11] which is based on Carranza's own testimony — Plaintiff testifies that she did not resist while

---

[9] *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999).

[10] *See* Exhibit 1, depicting many of the ant bites.

[11] Doc. 55 ¶ 17.

she was on the ground, and moved in response to pain from Carranza's hold and the ants, but was not trying to resist or get up.[12] That key material dispute is clearly a jury question, as it involves determining the credibility of witnesses and their testimony, making this case unsuitable for summary judgment.[13]

And second, Defendant Espinoza only moves for summary judgment as to the bystander liability claim against him, but does not address the excessive force claims.[14] Plaintiff stated her excessive force claim against "all Defendants,"[15] noted being rammed by Espinoza,[16] and brought a claim for being slammed to the ground.[17] Defendant Espinoza moved to have *all* claims dismissed against him with prejudice,[18] but the Court denied that motion outright.[19] Thus, irrespective of the outcome of the other claims, Plaintiff's excessive force claim against Espinoza for ramming her car with his and for slamming her face-first onto the ground necessarily survive. Plaintiff also requests that

---

[12] *See, e.g.*, Doc. 55-4 pp. 51:11–20; 52:5–25; 53:11–23; 54:1–4, 10; 56:23–24; 57:4–5.

[13] *See* § Standard of Review, *supra*.

[14] Doc. 54.

[15] Doc. 22 § VI.

[16] Doc. 22 ¶ 26.

[17] Doc. 22 ¶ 27 (this claim was erroneously pled against Carranza, but discovery revealed, and Defendants agree that the evidence shows, that Espinoza was the one to take Ms. Rogers out of her car and onto the ground).

[18] Doc. 24.

[19] Doc. 38.

Espinoza's Exhibit 1C[20] be stricken for its failure to comply with Federal Rule of Civil Procedure 5.2.

1. **A reasonable jury could easily find for Plaintiff on all claims at issue, and each readily survives qualified immunity.**

   *1.1. Qualified immunity standard*

"As a theoretical backdrop, the doctrine of qualified immunity attempts to balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"[21] The affirmative defense of qualified immunity does not apply where a public official's conduct "violate[s] clearly established . . . constitutional rights of which a reasonable person would have known."[22]

At the outset, the Plaintiff first must plead facts that plausibly make out a constitutional injury.[23] To defeat qualified immunity, however, "the *plaintiff's version* of those disputed facts must also constitute a violation of clearly established law."[24] In order to be clearly established, "the unlawfulness of the challenged conduct must be beyond debate[,

---

[20] Doc. 54-2.

[21] *Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020)(quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[22] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[23] *Joseph*, 981 F.3d at 330.

[24] *Id.* (emphasis added).

which] leaves the rare possibility [of] an obvious case . . . [where] the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances."[25] Generally though, qualified immunity "requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances" was held liable, and the cases cited need not be *directly* on point.[26]

Moreover, the Fifth Circuit in *Cooper v. Brown* reminds us that when it comes to qualified immunity in excessive force cases, "[t]he central concept is 'fair warning.'"[27] With respect to clear establishment specifically, it further clarifies that "'[t]he law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."[28] It goes on to conclude that "in an obvious case, the *Graham* excessive-force factors themselves can clearly establish the answer, even without a body of relevant case law."[29] Moreover, as the Court noted in its denial of Defendants' motions to dismiss, the qualified immunity

---

[25] *Id.* (quotations, citations, and alterations omitted).

[26] *Id.* (quotations, citations, and alterations omitted).

[27] 844 F.3d 517, 524 (5th Cir. 2016) (citations omitted).

[28] *Id.* (quoting *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)).

[29] *Id.* (quoting *Newman*, 703 F.3d at 764) (internal quotation marks omitted).

defense "will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel."[30]

*1.2. Excessive force and bystander liability*

With respect to excessive force under the Fourth Amendment, Plaintiff turns to *Joseph v. Bartlett*, one of the Fifth Circuit's more recent and thorough opinions on excessive force.[31] In that case, it noted that the Fourth Amendment is violated "when a seized person suffers an injury that results directly and only from a clearly excessive and objectively unreasonable use of force."[32] In conducting that inquiry, the Court looked at several factors:

(1) the severity of the crime;

(2) whether the suspect posed an immediate safety threat;

(3) whether the suspect was actively resisting or attempting to evade arrest;

(4) the relationship between the need for force and the amount used;

(5) the timing, amount, and form of the suspect's resistance—including whether the suspect was engaged in "active" versus "passive" resistance; and

---

[30] *Newman*, 703 F.3d at 763–64.

[31] *Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020).

[32] *Id.* at 332 (citing *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)).

(6) whether the officer selected the appropriate degree of force by taking measured actions that correspond to the suspect's resistance.[33]

Here, the force *at issue*[34] involves Carranza's pain compliance techniques while Ms. Rogers was restrained on the ground, surrounded, and posing no threat or risk of escape whatsoever,[35] and Carranza keeping her in a pile of fire ants, then leaving them on her while she was unable to remove them herself. Turning to the factor analysis:

(1) The crime at issue here was not severe or inherently violent, and thus weighs in **Plaintiff's** favor;

(2) There is no evidence whatsoever that Plaintiff posed any threat to anyone — let alone an *immediate* safety threat — while she was handcuffed and face down on the ground, surrounded by approximately 6 officers.[36] Thus, this factor weighs heavily in **Plaintiff's** favor;

(3) There is no evidence that Plaintiff was attempting to evade arrest while she was handcuffed and face down on the ground (in fact, she was surrounded by approximately 6 armored and armed officers),[37] and

---

[33] *Id.* at 332–33 (internal quotations, citations, and annotations omitted).

[34] Again, Espinoza did not move for summary judgment as to the excessive force claims against him for ramming her car with his, then slamming her to the ground within 6 seconds of opening her car door, despite the lack of threat or any other justification. *See* Doc. 54 p. 12 (noting the timestamps between Plaintiff voluntarily opening the door and ending up on the ground); *see also* Espinoza's Exhibits 1A and 1B (Espinoza and Moore's BWCs).

[35] *See generally* Espinoza BWC and Moore BWC.

[36] *See generally* Espinoza BWC and Moore BWC; *see also* Exhibit 2 pp. 8–12 (Dr. Keith Howse's expert report).

[37] *See* Espinoza BWC, Moore BWC, Exhibit 2.

Plaintiff testified that she did nothing to provoke Carranza's use of pain compliance techniques, only moved in response to pain caused by Carranza's techniques and the fire ants (which she contemporaneously verbalized), and did not try to get her knees underneath her to get up.[38] Thus, because Plaintiff's "resistance" was instead response to pain, she did not attempt to flee, and could not flee, this factor should weigh in **Plaintiff's** favor;

(4) The need for force was low at worst (Plaintiff was already in the officers' control and handcuffed on the ground), but the amount used was high, considering the combined effect of Carranza's pain compliance and continued biting by fire ants[39] — thus, this factor clearly weighs in **Plaintiff's** favor;

(5) At worst, Ms. Rogers engaged in a low amount of resistance (which she does not concede) due to the pain she was experiencing — as a result, this factor should weigh in **Plaintiff's** favor at this stage, or at least should be determined by a jury; and

(6) Carranza did not take measured actions that corresponded with Ms. Rogers', starting by keeping her arm wrenched upward while pressing her into the ground, unnecessarily causing pain, while she was on the ground, face down, handcuffed, and not moving, and ultimately resorting to the use of *greater* pain compliance techniques as she was

---

[38] Doc. 54-3 *or* Doc. 55-4 pp. 51:11–20; 52:5–25; 53:11–23; 54:1–4, 10; 56:23–24; 57:4–5.

[39] *See, e.g.*, Espinoza BWC at 5:38–7:28, *see generally* Exhibit 2.

being bitten by fire ants and verbalizing her pain, fear, and confusion[40] — thus, this factor also clearly weighs in **Plaintiff's** favor.

These factors also do not adequately capture the fact that Plaintiff was kept in a pile of fire ants for at least 31 seconds,[41] that Plaintiff was unable to remove the ants until *after* she was taken to jail,[42] and that Carranza knew she was being bitten, but did not do anything to help her as ants bit her hundreds of times.[43]

With respect to bystander liability, Plaintiff must show: (1) that Espinoza knew Carranza was violating Ms. Rogers' constitutional rights (here, his 4th Amendment right to be free from the use of excessive force), (2) that he had "a reasonable opportunity to prevent the harm," and (3) that he chose "not to act" anyway.[44] The Fifth Circuit also considers whether an officer acquiesced in the alleged constitutional violation.[45] Based on the evidence, Espinoza failed to intervene as he stood idly watching Carranza use pain compliance techniques on a restrained and defenseless woman for over 2 minutes, and did not say anything as Ms. Rogers screamed in pain from Carranza's actions and the fire

---

[40] *See, e.g.*, Espinoza BWC at 5:38–7:28, *see generally* Exhibit 2.

[41] Doc. 54 p. 17 (admitting as much).

[42] Doc. 54-3 *or* Doc. 55-4 pp. 64:20–65:22.

[43] Exhibit 1.

[44] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

[45] *Joseph*, 981 F.3d at 343 (citing *Whitley*, 726 F.3d at 647) (internal quotations, alterations, and other citations omitted).

ants.[46] As a result, a reasonable jury could easily find Espinoza liable as a bystander.

With respect to qualified immunity, the *Graham* factors themselves and the *Joseph* case both clearly establish her right to be free from the force used on her. The Fifth Circuit has also squarely held that "the state of the law in August 2016 clearly established that an officer engages in an objectively unreasonable application of force by continuing to kneel on the back of an individual who has been subdued."[47] To further crystallize just how clearly established Ms. Rogers' rights were here, she also points to the following cases in reverse chronological order: *Doss v. Helpenstell*, 626 Fed. App'x. 453 (5th Cir. 2015) (per curiam) (unpublished), *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013), *Newman v. Guedre*, 703 F.3d 757 (5th Cir. 2012), *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009), *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000).

In *Doss*, this Court determined that the plaintiff was non-threatening, posed little risk of escape, and any resistance was passive at most, so the officer's decision to quickly escalate the situation by striking him in the head with his pistol rather than continue negotiating was not entitled to qualified immunity.[48] In *Ramirez*, the officers applied

---

[46] *See, e.g.*, Espinoza BWC at 5:38–7:28; Doc. 55-3 pp. 37:1–38:1; *see generally* Exhibit 2.

[47] *Timpa v. Dillard*, 20 F.4th 1020, 1034 (5th Cir. 2021).

[48] *Doss*, 626 Fed. App'x. at 460.

excessive force by using a taser in response to the plaintiff failing to put his hands behind his back, and pulling his arm away, and that tasing him after he had been handcuffed and on the ground was even more excessive.[49] In *Newman*, the plaintiff did "struggle" by backing into the officers, but it was not considered "active resistance"; and the officers "immediately resorted to [force] without attempting to use physical skill, negotiation, or even commands."[50] The officers there were held liable for excessive force. In *Deville*, a plaintiff was held at traffic stop for a minor violation without probable cause, displayed passive resistance in the face of an officer's threat, and gave no indication of an intent to flee, so the officer's decision to breaking her window with a flashlight, roughly extracting her from her car, causing a forceful blow to her abdomen, and applying the handcuffs too tightly was not entitled to qualified immunity.[51] And in *Goodson*, the officers were not entitled to qualified immunity where they tackled the plaintiff, audibly broke his shoulder, and then jerked his arm back to handcuff him despite being told that his shoulder was broken when they did so to a plaintiff who did not have time to comply with their order to put his hands on

---

[49] *Ramirez*, 716 F.3d at 378–79.

[50] *Newman*, 703 F.3d at 763.

[51] *Deville*, 567 F.3d at 169.

their car, and then pulled his arm away in surprise at being grabbed and stumbled backwards due to being off-balance.[52]

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court **deny** Defendants' motions for summary judgment.

Respectfully submitted,

*/s/Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas
    Bar No. 24123583
U.S. Southern District of Texas
    Federal ID No. 3679181
511 Broadway Street
Houston, Texas 77012
Telephone: 573.340.3316
Fax: 713.893.6737
Email: alex@acj.legal
**Attorney for Plaintiff**

*/s/Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
    Bar No. 00790995
U.S. Southern District of Texas
    Federal ID No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone: 713.320.3785
Fax: 713.893.6737

---

[52] *Goodson*, 202 F.3d at 733–34, 740.

Email: AttorneyKallinen@aol.com
**Attorney for Plaintiff**

### Certificate of Service

I certify that on January 16th, 2025, I have served a true and correct copy of the foregoing document that was delivered by the ECF in accordance with the Federal Rules of Civil Procedure to all ECF notice attorneys of record.

<u>/s/Alexander C. Johnson</u>
Alexander C. Johnson