# Howse & Associates

### PUBLIC SAFETY CONSULTING SERVICES

99 Trophy Club Drive                                    (817) 988-8443
Trophy Club, Texas 76262                               (817) 488-4901 (Fax)


October 21, 2024


Mr. Randall L. Kallinen
Attorney & Counselor at Law
Kallinen Law, PLLC
511 Broadway Street
Houston, Texas 77012

        RE: Taylor Rogers Case

Dear Mr. Kallinen:

Enclosed is my report in the matter of Taylor Rose Rogers v. City of Santa Fe, et al. in the United States District Court for the Southern District of Texas-Galveston Division. I have also enclosed my current CV and a case history which is incorporated into the report. Please let me know if you have any questions. I will update the report as necessary.

Respectfully,


*/s/Keith A. Howse*
Keith A. Howse

**Report in the Matter of**

**Civil Action No. 3:24-cv-38**

**TAYLOR ROSE ROGERS,**
**Plaintiff,**
**v.**
**CITY OF SANTA FE, et al.,**
**Defendants.**

**United States District Court – Southern District of Texas, Galveston Division**

The opinions released in this report are based upon a review of the facts, as thus far presented, along with the sources listed below, concerning the incident involving Ms. Taylor Rogers and City of Santa Fe, Texas Police Department (SFPD) and Santa Fe, Texas Independent School District (SFISD) police officers. In reaching my opinions, I have relied upon forty-seven years of professional experience in the fields of public safety and law enforcement. My professional opinions expressed within this report are based upon a reasonable degree of certainty with regard to law enforcement professional standards, practices and training.

I have also relied upon seven years of undergraduate and graduate level academic studies in the fields of police science, criminal justice, criminology and law as well as my professional experience and certifications as a police officer, police instructor, field training officer, law enforcement agency training manager, and police executive.

I hold Basic, Intermediate, Advanced and Master peace officer certifications from the Texas Commission on Law Enforcement (TCOLE). Master certification is the senior-most law enforcement certification issued by TCOLE. In addition, I have held certifications as an Emergency Medical Technician, CPR instructor and Defensive Driving Instructor. I have testified and served as a police practices expert in State and Federal courts. Attached and incorporated is a copy of my CV which further outlines my education, training and experience and attests to my qualifications to evaluate the circumstances surrounding the above matter.

Items listed below are consistent with sources and documentation that are commonly and routinely inspected and reviewed as part of a law enforcement procedure or use of force investigation.

**SOURCES & DOCUMENTATION**

The following sources and documentation were supplied, reviewed and/or analyzed during the preparation of this report:

- ❑ Plaintiff's First Amended Complaint;
- ❑ Memorandum Opinion and Order of the Honorable Jeffrey Vincent Brown Signed on 03/14/2024;
- ❑ Santa Fe ISD Police Department Case Report and Supplement #2021-000085;
- ❑ Santa Fe Police Department Incident/Investigation Report Case # 21-0672;
- ❑ Texas Peace Officer's Crash Report #18444535.1/2021399342;
- ❑ Body Worn Camera Video for SFISD Sergeant Ruben Espinoza ;
- ❑ Body Worn Camera Video for SFPD Officer Rehm Showing Use of Force Against Ms. Taylor Rogers;
- ❑ Photographs of Ms. Taylor Rogers' Injuries to Face and Body;
- ❑ Medical Records for Ms. Taylor Rogers;
- ❑ Deposition of SFPD Officer Christian Carranza;
- ❑ Texas Penal Code;
- ❑ Texas Code of Criminal Procedure;
- ❑ Texas Transportation Code;
- ❑ Texas Constitution;
- ❑ United States Constitution;
- ❑ Texas Commission on Law Enforcement (TCOLE) Course-Use of Force - Intermediate Course 2107 (Rev. 4/ 2005 and 4/2019);
- ❑ Texas Commission on Law Enforcement (TCOLE) Course-De-Escalation Techniques -Course 1849 (12/2017, Rev. 01/2018);
- ❑ Integrating Communications, Assessment and Tactics; A Training Guide for Defusing Critical Incidents; Police Executive Research Forum (01/2016);
- ❑ International Association of Chiefs of Police (IACP) Law Enforcement Code of Ethics (10/1957).

## *INCIDENT SUMMARY*

On August 19, 2021 about 8:20am Ms. Taylor Rogers was dropping her son off at R.J. Wollam Elementary School in Santa Fe, Texas. Ms. Rogers encountered Officer Elizabeth Moore of the Santa Fe Independent School District Police who advised Ms. Rogers she had entered the carpool drop off/pick-up circle drive from the wrong direction. Officer Moore asserts she tried to get Ms. Rogers to stop by issuing verbal commands and striking Ms. Rogers' vehicle with her hands (the officer was on foot patrol). Ms. Rogers continued to drive away and Officer Moore radioed for assistance advising other officers she had a vehicle that was fleeing from her.

Santa Fe ISD Sergeant Ruben Espinoza was nearby and responded to Officer Moore's radio transmission. Sergeant Espinoza encountered Ms. Rogers and subsequently rammed his patrol vehicle into the front of Ms. Rogers' vehicle. Sergeant Espinoza has asserted his ramming of her vehicle head on was necessary to protect students and parents at the school.

Body worn camera video from Sergeant Espinoza shows him approach the driver's side door of Ms. Rogers' vehicle and physically grab Ms. Rogers and pull her out of her

vehicle onto the ground. The video shows Officer Moore assisting with the handcuffing of Ms. Rogers. A City of Santa Fe Police Officer, Christian Carranza, who also responded to the scene, is seen on body worn camera video assisting with the arrest and detention of Ms. Rogers, while Sergeant Espinoza looks on. It is estimated that Ms. Rogers was face down on the ground approximately three minutes total before being lifted off the ground and placed in a patrol vehicle.

After Officer Carranza arrives, although already handcuffed with her hands behind her back, and face down on the ground, Officer Carranza begins to hold Ms. Rogers down while placing his body weight on her back and simultaneously placing her right leg in an elevated leg hold. Ms. Rogers is seen and heard to cry out in significant pain. Ms. Rogers then tells officers to help her because she has ants on her face. Despite this painful outcry, Officer Carranza continues to force Ms. Rogers to remain face down on the ground for approximately 53 seconds while other officers stand by and watch, including Sergeant Espinoza, while ants attack Ms. Rogers.

Body-worn camera video shows Ms. Rogers to be in excruciating pain and asking for help to get the ants off of her. However, neither body-worn camera video nor official police reports filed by Officer Carranza of the Santa Fe Police Department and Officer Moore of the Santa Fe ISD Police Department cite any reference to Ms. Rogers being injured during her arrest. Neither is there any mention of officers summoning medical aid for Ms. Rogers.

Subsequent photographs clearly show Ms. Rogers suffered hundreds of ant bites to her face, neck, arms and body while in the custody of Officer Carranza under the supervision of Sergeant Espinoza. Ms. Rogers subsequently received medical treatment at the Galveston County Jail upon booking. Ms. Rogers also sought treatment at a local hospital after being released from jail on bond. Ms. Rogers was charged with the Felony crime of Evading Arrest or Detention with a vehicle. [1]

## *SCOPE OF REVIEW*

The scope and nature of this report is to provide an independent evaluation of the conduct of Santa Fe Police Officer Christian Carranza and Santa Fe ISD Police Sergeant Ruben Espinoza to determine whether their actions were consistent with professional standards and generally accepted practices and procedures of the law enforcement profession. The report is intended to assist the trier of fact with knowledge regarding police training, policies and generally accepted police practices and procedures.

## *GENERAL ANALYSES & OBSERVATIONS*

---

[1] The Incident Summary is taken from documents and/or video thus far reviewed and is solely intended to give the reader a general understanding of the incident under review.

Prior to analyzing any use of force by a peace officer it is important to understand the realm in which peace officers operate. Texas peace officers, including City of Santa Fe police officers and Santa Fe ISD police officers, are trained in the use of force and the use of deadly force while in the police academy and again throughout their careers during continuing education training.

Peace officers are trained that any use of force or deadly force must be reasonable for the circumstances and be immediately necessary. Peace officers are trained their use of force or deadly force will be evaluated and reviewed based upon their agency's use of force policy and any applicable legal standards. Peace officers are trained in the basic police academy their use of force or deadly force will be evaluated on an objectively reasonable basis from the position of a similarly trained and situated peace officer and based on information that was known to the officer at the time, considering the totality of the circumstances.[2]

All Texas peace officers are also trained on the Texas Constitution and the United States Constitution, with particular emphasis on the Fourth Amendment of the US Constitution which is stated below.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[3]

Texas peace officers also swear an oath prior to performing official peace officer actions.

> I, (name of officer), do solemnly swear (or affirm), that I will faithfully execute the duties of the office of (name of office, i.e. peace officer) of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.[4]

The law enforcement profession has adopted the Law Enforcement Code of Ethics to further guide peace officers in their duties.

> Law Enforcement Code of Ethics
>
> As a law enforcement officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality, and justice.

---

[2] Graham v. Connor, 490 U.S. 386 (1989).
[3] U.S. Const., amend. IV.
[4] Example taken from Texas Constitution, Article XVI, Section 1.

I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency. I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.

I know that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence.

I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession... law enforcement.[5]

Though this incident involved multiple peace officers, this review will primarily consider the actions of Sergeant Espinoza and Officer Carranza.  First, we will look at the use of force and the related conduct of Sergeant Espinoza.

ANALYSIS OF THE ARREST/USE OF FORCE BY SERGEANT ESPINOZA AGAINST MS. ROGERS

This evaluation of the arrest and use of force against Ms. Rogers is based upon evidence submitted thus far for review, including the body worn camera videos taken at the scene.

---

[5] Law Enforcement Code of Ethics as adopted by the International Association of Chiefs of Police, October 1957. The IACP is headquartered at 44 Canal Center Plaza # 200 in Alexandria, Virginia 22314. Telephone 703-836-6767.  The Law Enforcement Code of Ethics has also been adopted by the Texas Commission on Law Enforcement, 6330 East Highway 290, Suite 200 in Austin, Texas 78723. Telephone 512-936-7700 and is taught to all peace officers as part of the Basic Peace Officer Course.

With regard to the arrest of Ms. Rogers by Sergeant Espinoza, I offer the following observations and opinions.

When discussing the application of force by a police officer against a citizen, peace officers are trained the totality of the circumstances must be considered as well as many other factors such as the reasonableness and amount of force used and whether such force was immediately necessary, and whether there are any alternatives available to the use of force, such as attempting de-escalation tactics.

A review of the incident report submitted by Sergeant Espinoza shows that he elected to use force against Ms. Rogers when he observed her to be driving the wrong way in the elementary school circle drive/carpool lane. In fact, Sergeant Espinoza had verbally warned Ms. Rogers that she could not enter the drive a few minutes earlier when she first attempted to turn into the drive. Sergeant Espinoza reported that a few minutes later he heard Officer Moore on the radio saying a vehicle was fleeing from her. Sergeant Espinoza then saw Ms. Rogers driving the wrong way in the school circle drive and rammed his patrol vehicle head-on into Ms. Roger's vehicle to stop her direction of travel. It should be noted that Ms. Rogers' eight year old son was also in her vehicle but it is unclear, as of the writing of this report, if Sergeant Espinoza was aware of this when he decided to use force against Ms. Rogers and ram her vehicle head-on.[6]

Sergeant Espinoza reported that he feared for the safety of students and parents using the drive. However, body worn camera video presented thus far for review does not show any students or parents in the immediate area. Having patrolled campus environments for the majority of my professional law enforcement career (25 years), I have observed countless motorists turn on streets and drives heading in the wrong direction of the traffic flow. While I routinely flashed my headlights, turned on my emergency equipment, utilized my vehicle public address system, weaved in and out in front of the errant motorist, or simply waived my arms to get their attention, I never once decided the reasonable course of action was to ram my patrol vehicle into their vehicle, head-on. Neither have I been trained that such action is the appropriate law enforcement action to take in such a circumstance.

Based upon my training and professional experience it is my opinion that Sergeant Espinoza's use of force (ramming his vehicle into Ms. Rogers' vehicle) was inconsistent with law enforcement training, policies and procedures considering the totality of the circumstances and generally accepted law enforcement practices.

After crashing into Ms. Rogers' vehicle, body-worn camera video then shows Sergeant Espinoza exit his patrol vehicle and approach the driver's side of Ms. Rogers' vehicle where he is observed physically pulling Ms. Rogers out of her vehicle and throwing her to the ground where he and Officer Moore handcuff Ms. Rogers' arms behind her back.

Texas peace officers are required to attend de-escalation training to learn how to avoid the use of force where possible. Texas police officers are trained to utilize de-escalation

---

[6] Scene video and reports indicate that neither vehicle's air bags deployed indicating a slow speed crash.

7

techniques, whenever practical, prior to using force. As of the writing of this report, neither SFPD nor SFISD policies and procedures on the use of force have been submitted for review.  However, what is clear through body camera videos is that Sergeant Espinoza did not attempt to de-escalate the situation with Ms. Rogers when it should have been clear that Ms. Rogers was upset and was not understanding why force was being used against her and why she was being arrested.

Further, police officers are trained they are only to use the amount of force reasonably and immediately necessary to make an arrest and that there are constitutional limits to a peace officer's authority.  Officers are also trained they are responsible for the safety and welfare of those in their custody during any detention or arrest.

Based upon my professional training and experience, it is my professional opinion the actions of Sergeant Espinoza (the action of physically pulling Ms. Rogers from her vehicle and throwing her to the ground) were also inconsistent with law enforcement training to de-escalate the need to use force and therefore outside the scope of generally accepted police practices and procedures.

## ANALYSIS OF THE ARREST/USE OF FORCE BY OFFICER CARRANZA AGAINST MS. ROGERS

When reviewing a use of force incident we must be careful not do so arbitrarily or through what is often referred to as 20/20 hindsight.  However, based upon the evidence as submitted thus far, there is sufficient detail and information presented via body-worn camera video to observe Officer Carranza's interaction with Ms. Rogers.

Peace officers receive training in the previously cited Graham v. Connor case so they can determine the nature and substance of any potential risk associated with a particular citizen encounter to determine whether force should be used.  Commonly known as the Graham Factors, these include the following:

□ What was the severity of the offense that was being committed?

□ Was the suspect in possession of a weapon?

□ Was there an immediate threat to the officer's safety or the safety of others?

□ Was the suspect actively and physically resisting the officer?

□ Was the suspect evading or fleeing from the officer?

In addition, the following considerations are also commonly used to determine the necessity for the use force.

□ How many suspects were there? Was the officer alone and outnumbered, or were there additional officers on scene for back-up?

□ Was the officer outmatched due to the suspect's superior physical size or strength?

□ Did the suspect verbally threaten to harm the officer or another?

Because peace officers receive training on these use of force considerations and because there is body-worn camera video of Officer Carranza's use of force against Ms. Rogers we are able to simply apply these teachings to the facts of this case.

During Officer Carranza's interaction with Ms. Rogers, she had already been arrested and handcuffed for Evading Arrest and Detention with a Vehicle and no longer posed a flight risk; Ms. Rogers did not possess any weapons; Ms. Rogers posed no immediate threat to Officer Carranza or any officers or other persons; Ms. Rogers was not actively and physically resisting Officer Carranza (though Ms. Rogers was clearly upset and screaming in pain); Ms. Rogers was not attempting to flee or evade Officer Carranza; Officers were not outnumbered; there were at least six SFPD and SFISD officers at the scene; Body camera video does not show that Ms. Rogers was physically larger or stronger than Officer Carranza; and Ms. Rogers never verbally threatened to harm Officer Carranza or any other officers.

The body-worn camera video does show Officer Carranza holding Ms. Rogers face down on the ground for approximately 53 seconds and, at the same time, elevating her right leg into the air placing pressure on her lower back in what can best be described as a maneuver intended to cause pain and produce submission. In fact, Ms. Rogers is heard to say that Officer Carranza was cutting off her circulation.

Peace officers are not trained to perform such maneuvers that are intended to cause pain after a subject has already been handcuffed and taken into custody and is not a threat to the officer. Based upon my professional training and experience, Officer Carranza's use of such force is contrary to the way peace officers are trained. As with Sergeant Espinoza, Officer Carranza did not attempt to use any de-escalation tactics to calm Ms. Rogers, only pain compliance tactics were used. For the reasons discussed above, it is my professional opinion the force used by Officer Carranza was unnecessary and excessive for the circumstances.

In addition, body-worn camera video also shows Ms. Rogers yelling in pain partially due to the reasons just discussed but also due to her being held face down in a bed of ants/fire ants. Ms. Rogers is heard crying for help saying ants were on her face. As Ms. Rogers was handcuffed and being held down by Officer Carranza, she could not protect herself or attempt to get the ants off of her. Video shows Ms. Rogers alerted Officer Carranza and other nearby officers at least eight times that she needed help and/or that ants were on her face.

Peace officers are trained they are responsible for the safety and welfare of those persons in their custody. Officer Carranza knew, or should have known, Ms. Rogers was in the custody of law enforcement.  Ms. Rogers' cries for help were clearly heard on video but were ignored by Officer Carranza, allowing Ms. Rogers to sustain hundreds of ant/fire ant bites to her face, neck, arms, head and upper torso.[7]

Peace officers also receive first aid training as part of the police academy curriculum. However, no evidence has thus far been submitted to indicate Officer Carranza (or Sergeant Espinoza) ever rendered first aid to Ms. Rogers or summoned Emergency Medical Services to the scene. Ants release venom with every bite and, as most Texans know, each bite is painful.

Based upon my professional training and experience, it is my opinion that Officer Carranza was more concerned about punishing Ms. Rogers by applying a painful leg hold (to an already handcuffed Ms. Rogers) and that he exhibited a deliberate indifference to the welfare of Ms. Rogers and that he lost situational awareness as he failed to respond in a timely manner to the outcries for help coming from Ms. Rogers. This is also contrary to how peace officers are trained and contrary to the obligation to care for the safety and welfare of those persons in their custody.

ADDITIONAL CONSIDERATIONS/OBSERVATIONS

During the course of the review of Officer Carranza's deposition testimony, it was observed that Officer Carranza testified that, prior to his use of force against Ms. Taylor, he received internal discipline from the Santa Fe Police Department for using an unapproved use of force neck restraint tactic. Officer Carranza received only a verbal counsel.[8]

A review of the documents thus far submitted for review indicates that no use of force reports were completed for this incident by either Sergeant Espinoza or Officer Carranza. This is contrary to how peace officers are trained and is outside the scope of generally accepted law enforcement practices and procedures.

Peace officers have a duty to intervene when excessive force is used against a citizen. In this case, it appears that Sergeant Espinoza was the supervisor in charge of the incident, yet he did not immediately stop Officer Carranza once hearing Ms. Rogers' cries for help. This is also contrary to how peace officers are trained and is outside the scope of generally accepted law enforcement practices and procedures.

A review of the documents thus far submitted shows neither Officer Carranza nor Sergeant Espinoza reported Ms. Rogers received injuries during her arrest. This is also

---

[7] Photographs of Ms. Rogers' ant bites show she suffered hundreds of ant/fire ant bites estimated to be around 400-500 stings during the time she was placed on the ground by Sergeant Espinoza and Officer Carranza.
[8] Deposition of Officer Carranza, Page 19.

contrary to how peace officers are trained and is outside the scope of generally accepted law enforcement practices.

### *SUMMARY*

Based upon my professional training and experience and upon the evidence presented thus far, it is my professional opinion that a reasonable, similarly trained and situated peace officer would not have used such unnecessary and excessive force against Ms. Rogers as it was not immediately necessary for the circumstances known to Sergeant Espinoza and Officer Carranza at the time. To wit:

Sergeant Espinoza used force against Ms. Rogers when he rammed his patrol car into the vehicle driven by Ms. Rogers and occupied by her eight year old son;

Sergeant Espinoza used force against Ms. Rogers when he physically pulled her from her vehicle and threw her on the ground;

Sergeant Espinoza, as supervisor on the scene, failed to intervene or stop Officer Carranza from inflicting unnecessary and excessive force against Ms. Rogers;

Sergeant Espinoza failed to use de-escalation techniques when he physically encountered Ms. Rogers after crashing into her vehicle;

Officer Carranza failed to use de-escalation techniques when he physically encountered Ms. Rogers;

Officer Carranza used force against Ms. Rogers after she was already handcuffed and subdued;

Officer Carranza used force against Ms. Rogers when he applied a painful leg hold in order cause Ms. Rogers pain after she had already been handcuffed and subdued;

Officer Carranza disregarded Ms. Rogers' eight cries for help due to Officer Carranza holding Ms. Rogers in such a position where her head and upper torso were in an ant/fire ant bed causing Ms. Rogers to receive hundreds of painful and venomous ant bites;

Neither Sergeant Espinoza nor Officer Carranza requested medical assistance for Ms. Rogers.

Based upon my professional training and experience, and on the evidence thus far submitted for review, each use of force described above was unnecessary and excessive force and is inconsistent with the Law Enforcement Code of Ethics, the officers' sworn oath of office, and is contrary to the way peace officers are trained on the use of force with regard to protecting the constitutional rights of all persons. For the reasons discussed within this report, it is my opinion the conduct exhibited by Sergeant Espinoza

and Officer Carranza was outside the scope of generally accepted law enforcement training, practices and procedures.

My aforementioned opinions are based on a reasonable degree of certainty, having reviewed the evidence as thus far submitted, and are based upon my forty-seven years of law enforcement and public safety experience and training and what was known to officers at the time and how a reasonable, similarly trained and similarly situated peace officer would react given generally accepted training and law enforcement procedures when considering the totality of the circumstances. However, questions of fact and determinations of reasonableness are left to be evaluated by a fair and impartial civil justice system.

I reserve the right to review, modify or update my opinions based upon the introduction or withdrawal of any developed information relevant to the facts presented in this case.

Respectfully submitted on October 21, 2024.

/s/ *Keith A. Howse*
Keith A. Howse


## STATEMENT OF COMPENSATION

I have charged professional consulting fees to review this case and to prepare this report. Consulting fees are charged at the rate of $150 per hour. Deposition and trial testimony fees are charged at the rate of $275 per hour.


## DECLARATION

My name is Keith A. Howse, my date of birth is 05-09-1960 and my address is 99 Trophy Club Drive Trophy Club, Texas, United States of America. I declare, certify, verify, and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Tarrant County, State of Texas, on the 21st day of October, 2024.

/s/ *Keith A. Howse*
Keith A. Howse

# Keith A. Howse
99 Trophy Club Drive
Trophy Club, Texas 76262
(817) 988-8443

| | |
|---|---|
| **Education** | Texas Wesleyan University School of Law – Fort Worth, Texas |
| | (Now Texas A & M University School of Law) |
| | Doctor of Jurisprudence – 1998 |
| | |
| | University of Texas at Arlington – Arlington, Texas |
| | Bachelor of Arts in Criminology and Criminal Justice – 1995 |
| | |
| | Del Mar College – Corpus Christi, Texas |
| | Associate of Applied Sciences in Police Science - 1980 |
| | |
| | Center for American and International Law |
| | Institute for Law Enforcement Administration – Plano, Texas |
| | School of Police Supervision – 1990 |

**Professional Experience**

Howse & Associates
99 Trophy Club Drive
Trophy Club, Texas 76262

**Principal Consultant & Investigator (2000 – Present)**
Provide professional criminal and civil investigative services for private and government clients throughout Texas. Conduct national security and public trust related background investigations on behalf of the United States Government. Provide public safety consulting services in matters of security and police practices, use of force, arrest, search and seizure, premises liability, inadequate security, and crime foreseeability. Serve as subject matter expert in State and Federal courts on issues involving law enforcement and security practices.

Baylor Department of Public Safety
3500 Gaston Avenue
Dallas, Texas (1982 - 2007)

**Director - Public Safety/Assistant Chief of Police (1997 - 2007)**
Provided direction and leadership to the 249 personnel of the Baylor Health Care System Department of Public Safety (BDPS), a special district police agency serving two urban planned development districts in Dallas, Texas known as Baylor University Medical Center, consisting of healthcare, academic, commercial, high-rise office, retail, multi-family residential, hotel, private/public parking, and special use properties. Managed comprehensive public safety program responsible for law enforcement, security, parking/traffic management, traffic safety, and emergency/fire safety planning programs. Provided senior management and budget accountability for all aspects of police and security services for 57 armed police officers and 140 unarmed security officers, plus support staff. Served as BDPS legal advisor for police and security matters. Reviewed all arrest and offense reports for accuracy and legality. Chaired Department Use of

Force Review Committee. Testified before various state commissions on law enforcement related matters and monitored state legislative sessions to review proposed legislation impacting law enforcement operations.

**Captain of Police (1991 - 1997)**
Directed and managed personnel in the Support Services Division, including Training and Personnel, Firearms, Crime Prevention and Fire Prevention, and Security Technology Applications. Additional duties included planning and research, quality assurance and defensive driving coordinator, and community services programs. Instructed basic and in-service public safety related training programs to all DPS personnel. Served as training manager for the department and emergency management coordinator for natural and civil disasters. Approved all arrests and criminal offense reports as they related to the use of force by police and security officers.

**Lieutenant of Police (1986 - 1991)**
Managed the crime prevention and fire prevention unit as well as Parking & Traffic Division. Conducted fire/life safety inspections and educational programming. Managed recruiting and applicant testing to establish a qualified and diverse public safety workforce and conducted criminal investigations as assigned. Served as a patrol commander supervising one watch of police and public service officers. Performed as Field Training Officer for new recruits. Provided patrol services and approved all arrests and criminal offense reports.

**Corporal/Emergency Medical Technician - Field Training Officer (1985 - 1986)** Provided field training to new officers and functioned as weekend patrol supervisor. Prepared and reviewed daily incident reports and handled citizen complaints and inquiries. Performed routine patrol and first response emergency medical duties and criminal investigations as needed.

**Public Service Officer (1982 - 1985)**
Patrolled designated areas on foot and in marked patrol vehicles to deter and respond to criminal activity. Prepared detailed written reports concerning arrests and testified in court as necessary. Provided customer service such as motorist assistance, safety escorts and general assistance to members of the campus community. Served as relief dispatcher as needed.


Braniff International Airways, Inc.
Dallas-Fort Worth Airport, Texas (1981 - 1982)

Note: The company was declared bankrupt and dissolved in late 1980s.

**Lead Trainer (December 1981- March 1982)**
Provided FAA approved security training to security screeners on the recognition and detection of weapons and explosives concealed on passengers and in passenger luggage.

**Security Screener ( January 1981- December 1981)**
Screened passenger baggage for dangerous items, weapons, explosives and other prohibited materials at terminal security checkpoints.

**Current & Past Licenses and Certifications**

| | |
|---|---|
| Attorney & Counselor at Law | State Bar of Texas |
| Master Peace Officer Certification | Texas Commission on Law Enforcement |
| Advanced Peace Officer Certification | Texas Commission on Law Enforcement |
| Intermediate Peace Officer Certification | Texas Commission on Law Enforcement |
| Basic Peace Officer Certification | Texas Commission on Law Enforcement |
| Police Instructor | Texas Commission on Law Enforcement |
| Crime Prevention Inspector | Texas Commission on Law Enforcement |
| Security Manager | Texas DPS Private Security Bureau |

| Private Investigator | Texas DPS Private Security Bureau |
| Certified Protection Professional (CPP) | American Society for Industrial Security (ASIS) International |

**Professional Awards & Recognition**

Live-Saving Award
Meritorious Conduct Award
Academic Achievement Award
Director's Award
IACP National Civil Rights Recognition

**Current & Past Professional Affiliations**

American Bar Association
American Society for Industrial Security  (ASIS) International
International Association of Chiefs of Police
International Association of Campus Law Enforcement Administrators
Institute for Law Enforcement Administration – Center for Law Enforcement Ethics
Texas Association of Licensed Investigators
Boy Scouts of America

**Government Security Clearances**

Top Secret (United States Department of Defense)

### Specialized Training & Continuing Education

Basic Police Academy
>North Central Texas Council of Governments Regional Police Academy-Arlington, Texas

Crime Prevention Inspector School (Commercial Business and Residential Security Assessments)
>Texas State University (Formerly Southwest Texas State University) – San Marcos, Texas

Advanced Crime Prevention School
>Texas State University (Formerly Southwest Texas State University) – San Marcos, Texas

Crime Prevention Through Environmental Design
>University of Louisville – Louisville, Kentucky

School of Police Supervision
>Institute for Law Enforcement Administration, Center For American & International Law – Plano, Texas

Advanced Management College
>Institute for Law Enforcement Administration, Center For American & International Law – Plano, Texas

Police Instructor School
>North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Field Training Officer School
>North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Sex Crimes Investigation School
>North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Crime Scene Investigation
>North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Use of Force
>North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Child Abuse Investigation
>North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Presidential Protection Detail Training Program
>United States Secret Service – Austin, Texas

Arrest, Search & Seizure
>North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Management of Aggression, Violence, & Intoxication Instructor Program
>Texas Hospital Association – Austin, Texas

Emergency Medical Technician – Basic School
>Baylor University Medical Center – Dallas, Texas

Defensive Driving Instructor Course
>National Safety Council – Dallas, Texas

CPR Instructor Course
>American Heart Association – Dallas, Texas

Explosives Recognition & Structural Firefighting Course
      Texas Engineering Extension Service, Texas A&M – College Station, Texas

Sixth Annual International Terrorism Seminar
      North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Police Personnel Recruitment & Selection Course
      North Central Texas Council of Governments Regional Police Academy – Arlington, Texas

Healthcare Security & Safety Management
      American Society of Hospital Engineering – Manhattan Beach, California

NCIC/TCIC Policy and Procedures
      Texas Department of Public Safety – Austin, Texas

Family Violence Investigation
      Baylor Health Care System Police – Dallas, Texas

Police Cultural Diversity
      Baylor Health Care System – Dallas, Texas

Police Contemporary Issues Conference – Use of Force/Police Pursuit
      Institute for Law Enforcement Administration, Center For American & International Law – Plano, Texas

Police Contemporary Issues Conference – Quality Management
      Institute for Law Enforcement Administration, Center For American & International Law – Plano, Texas

Police Compstat Crime Statistics Course
      Los Angeles Police Department – Los Angeles, California

American Society for Industrial Security (ASIS) International Annual Conference
      CPP/Security Continuing Education – Las Vegas, Nevada

American Society for Industrial Security (ASIS) International Annual Conference
      CPP/Security Continuing Education – Orlando, Florida

American Society for Industrial Security (ASIS) International Annual Conference
      CPP/Security Continuing Education – San Diego, California

American Society for Industrial Security (ASIS) International Annual Conference
      CPP/Security Continuing Education – New Orleans, Louisiana

American Society for Industrial Security (ASIS) International Annual Conference
      CPP/Security Continuing Education – San Antonio, Texas

American Society for Industrial Security (ASIS) International Annual Conference
      CPP/Security Continuing Education – Dallas, Texas

International Association of Chiefs of Police Annual Conference
      Police Continuing Education – Los Angeles, California

International Association of Chiefs of Police Annual Conference
      Police Continuing Education – Salt Lake City, Utah

International Association of Chiefs of Police Annual Conference
      Police Continuing Education – Charlotte, North Carolina

International Association of Chiefs of Police Annual Conference
  Police Continuing Education – Philadelphia, Pennsylvania

International Parking Institute Annual Conference
  Parking Management Continuing Education – Las Vegas, Nevada

American Society for Industrial Security (ASIS) International Annual Conference
  CPP/Security Continuing Education – Los Angeles, California

Warrantless Searches
  State Bar of Texas – Dallas, Texas

The Right of Police to Investigate
  State Bar of Texas – Dallas, Texas

Police Excessive Force/Police Pursuit
  State Bar of Texas – Dallas, Texas

USA Patriot Act
  State Bar of Texas – Dallas, Texas

Consequence of Illegal Immigration/Guns, Drugs, Illegal Aliens
  State Bar of Texas – Dallas, Texas

White Collar Crime Within the Healthcare Industry
  State Bar of Texas – Dallas, Texas

White Collar Crime and Federal Investigations
  State Bar of Texas – Dallas, Texas

Internet and Computer Crimes
  State Bar of Texas – Dallas, Texas

Police Training & Governmental Liability
  State Bar of Texas – Dallas, Texas

DWI & Breath and Blood Testing
  State Bar of Texas – Dallas, Texas

Police Practices – Arrest, Search & Seizure
  State Bar of Texas – Dallas, Texas

Immigration Law Enforcement
  State Bar of Texas – Dallas, Texas

Prosecution of Criminal Cases in a Corporate Environment
  State Bar of Texas – Dallas, Texas

Crime Scenes & Prosecutions
  State Bar of Texas – Dallas, Texas

Arrest, Search & Seizure – US Supreme Court Update
  State Bar of Texas

National Training Standards for Federal Background Investigators

Keypoint Government Solutions – Loveland, Colorado

Human Trafficking
Texas Commission on Law Enforcement – Austin, Texas

Advanced Human Trafficking
OSS Academy – Austin, Texas

Legal Update
Texas Commission on Law Enforcement – Austin, Texas

Open Carry Law Update
Texas Commission on Law Enforcement – Austin, Texas

Civil Disturbance & Riot Control
OSS Academy – Austin, Texas

Recording Law Enforcement Actions
OSS Academy – Austin, Texas

Eyewitness Evidence
OSS Academy – Austin, Texas

De-Escalation of Force
OSS Academy – Austin, Texas

Negotiator Tactics
OSS Academy – Austin, Texas

Psychological Evaluations in Criminal & Civil Cases
State Bar of Texas – Austin, Texas

Use of Deadly Force in Texas
State Bar of Texas – Austin, Texas

Fourth Amendment Legislative Update
State Bar of Texas – Austin, Texas

Use of Force: Police Perspective
State Bar of Texas – Austin, Texas

Human Trafficking & the Criminal Justice System
State Bar of Texas – Austin, Texas

Illegal Evidence: Wiretapping/Hacking & Data Interception
State Bar of Texas – Austin, Texas

Electronic Control Device-Basics
OSS Academy-Austin, Texas

Recent Case History – Keith A. Howse

The following represents the cases in which I have testified in court or by deposition as an expert in the last four years.

Barbara Coats, et al. v. Harris County, et al. Houston, Texas (2017) – 61st Judicial District Court – Harris County, Texas – Cause No. 2012-55551 – Police Procedure - Police Training –Use of Deadly Force

Parker v. Briggs of De Gaulle, Inc., New Orleans, Louisiana (2017) – Civil District Court for the Parish of Orleans – Cause 2011-4030 – Security Procedure

Flowers v. JKS Security, et al. Dallas, Texas (2018) – 162nd Judicial District Court – Dallas County, Texas – Cause No. DC-16-09855 – Police Procedure-Security Procedure

Ruda v. State of New Jersey, et al. – Superior Court of New Jersey-Somerset County Division, New Jersey, (2020) - Docket No. SOM-L-533-17 – Security Practice & Procedure

Holman v. Harris County, et al. – Houston, Texas (2019) – United States District Court, Southern District of Texas-Houston Division-Civil Action 4:17-CV-01745 – Police Procedure-Use of Force

Ida Renae Nobles, et al. v. Sergeant Richard Egal, et al. – Austin, Texas (2021) United States District Court, Western District of Texas-Austin Division – Civil Action 1:19-CV-00389 – Police Procedure-Use of Deadly Force

Stephen Bryant III v. Galveston County, Texas, et al. – Galveston, Texas (2022) United States District Court, Southern District of Texas, Galveston Division – Civil Action No.:3:20-CV-374 – Police Procedure-Use of Force

Brian King v. Village of Potsdam, New York, et al. – Potsdam, New York (2022) United States District Court – Northern District of New York – Civil Action No. 8:2020CV-00849 – Police Procedure-Use of Force

Blanca Gomez v. City of Lyford, Texas, et al. – Lyford, Texas (2023) United States District Court – Southern District of Texas-Brownsville Division – Civil Action 1:22-CV-00036 – Police Procedure-Use of Deadly Force

Jessica Arellano v. City of Austin, et al. – Austin, Texas (2023) United States District Court – Western District of Texas – Austin Division – Civil Action Cause of Action No. 1:23-cv-8 – Police Procedure-Use of Deadly Force